IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SHERRY LYNN KITCHEN,

    Plaintiff,

v.                                           Civil Action No. 5:05CV39
                                                       (STAMP)

DAIRYLAND INSURANCE COMPANY,

    Defendant.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT DAIRYLAND INSURANCE COMPANY'S
MOTION FOR SUMMARY JUDGMENT ON ITS
COUNTERCLAIM FOR DECLARATORY JUDGMENT**

I.  Procedural History

Plaintiff, Sherry Lynn Kitchen ("Kitchen"), filed an action in Circuit Court of Ohio County, West Virginia, against defendant, Dairyland Insurance Company ("Dairyland") alleging a claim of common law misconduct and violations of the West Virginia Unfair Claims Settlement Practices Act, West Virginia Code § 33-11-4, breach of the implied covenant of good faith and fair dealing, breach of contract, and violation of fiduciary duty. Dairyland timely removed the action to the United States District Court for the Northern District of West Virginia on the grounds that diversity of citizenship exists and the amount in controversy exceeds $75,000.00. That same day, Dairyland filed an answer to the complaint, which included a counterclaim for declaratory judgment seeking a declaration that the losses alleged by Kitchen are not covered under the applicable automobile insurance policy

("policy"). On May 11, 2005, this court filed an Order granting Dairlyand's motion to bifurcate and stay the bad faith claims pending resolution of the declaratory judgment counterclaim.

On March 27, 2006, Dairyland filed a motion for summary judgment on its declaratory judgment counterclaim, to which Kitchen responded and Dairyland replied.

This Court has now carefully considered the motion for summary judgment filed by Dairyland. For the reasons stated below, this Court finds that the defendant Dairyland's motion for summary judgment should be granted.

## II. Facts

On November 30, 2002, Kitchen purchased automobile insurance from Dairyland at the AAA office in Wheeling, West Virginia. Kitchen completed the insurance application seeking coverage for a 2000 Chevy Malibu for a term of six-months with a total premium of $1,084.74. Dairyland alleges that it mailed Kitchen the policy, the policy declarations page and the certificate of insurance. Kitchen asserts that she never received a copy of the actual policy.

On December 11, 2002, Dairyland asserts that it mailed Kitchen the first installment bill on the policy in the amount of $182.00 to the address provided on the insurance application. Dairyland never received the first installment payment, which was due on December 30, 2002. Kitchen agrees that she did not pay the first

installment of $182.00, but she denies that she ever received a billing statement.

Since Dairyland did not receive payment by December 30, 2002, it issued a "Notice of Cancellation." (Dairyland's Mot. Summ. J. at 3.) Dairyland provides a "Certificate of Mailing" to establish that the notice of cancellation was mailed to Kitchen at her listed address. Kitchen denies ever receiving a notice of cancellation.

Kitchen asserts that she telephoned Kathryn Kutsch ("Kutsch"), a AAA agent and/or representative for Dairyland to inquire about her billing statement. Kitchen states that she was told by Kutsch that she would be receiving a billing statement in the mail. Kitchen admits that she does not know when she contacted Kutsch. (Kitchen's Resp. Ex. A at 44.)

On February 17, 2003, Kitchen's automobile, a 2000 Chevy Malibu caught fire due to an unknown cause resulting in a total loss of the vehicle. After investigation, Dairyland denied the claim by letter dated February 24, 2003. The denial of coverage letter stated that the policy was cancelled and was sent to the address Kitchen provided on her application. Kitchen maintains that she was not informed that her policy had been cancelled prior to the denial of coverage letter dated February 24, 2003.

Dairyland seeks a declaration from this Court that the policy cancellation of January 30, 2003 was effective and that no coverage existed for the February 17, 2003 claim.

III. <u>Applicable Law</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." <u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir. 1991), <u>cert. denied</u>, 502 U.S. 1095 (1992)(citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

However, as the United States Supreme Court noted in <u>Anderson</u>, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." <u>Id.</u> at 250; <u>see also</u>

Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

In Dairyland's motion for summary judgment on its March 24, 2005 counterclaim, Dairyland argues that: (1) actual receipt of the notice of cancellation by Kitchen is not a condition precedent to cancellation of the insurance policy; (2) the notice of

cancellation sent by Dairyland to Kitchen was clear, definite and certain as to Dairyland's intent to cancel the policy; and (3) even if the Court should determine that the notice of cancellation must be received, a rational fact finder could not find for Kitchen in this matter.

In response, Kitchen argues that the provisions of the insurance policy regarding cancellation are unclear, ambiguous and contrary to public policy. Kitchen also argues that under the laws of West Virginia Dairyland's notice of cancellation was ineffective. Finally, Kitchen asserts that based upon the facts of this case Dairyland should be estopped from denying Kitchen coverage under the insurance policy.

A.  Receipt of Notice of Cancellation

West Virginia Code § 33-6A-1 provides that an insurer is prohibited from canceling an automobile liability insurance policy unless "[t]he named insured fails to make payments of premium for the policy or any installment of the premium when due." Further, West Virginia Code § 33-6A-3 states that the insurer or its agent must "specify the reason or reasons relied upon by the insurer for the cancellation."

In the absence of a statue, the court in Camastro v. Dlesk, 484 S.E.2d 188, 191 (W.Va. 1997), held that the

> actual receipt of a notice of cancellation of an automobile insurance policy is not a condition precedent to cancellation, where the policy provided that it could be cancelled by mailing a written notice to the insured

at his address shown on the policy and that mailing of
such a notice would be sufficient proof of notice.

(citing Laxton v. National Grange Mutual Ins. Co., 148 S.E.2d 725 (W.Va. 1966).)[1] An exception to the general rule arises in instances where a statute requires that actual notice be given. See Smith v. Municipal Ins. Co., 289 S.E.2d 669 (W.Va. 1982). The exception does not apply in this civil action because there is no statute governing cancellation of the policy.

As applied to the facts of this case, Camastro, 484 S.E.2d at 191, supports giving effect to the provision regarding cancellation on the coverage of the policy. The applicable cancellation provision of the policy states as follows:

> "If we cancel, our mailing of notice to your address
> shown on the declarations page will constitute proof of
> notice as of the date we mail it. Delivery of written
> notice of cancellation by either you or us will be
> equivalent to mailing."

(Dairyland's Mot. Summ. J. Ex. D at 18.)

Based upon other court's interpretation of similar provisions, this Court finds that this policy's provisions are valid and are not contrary to public policy. See Camastro, 484 S.E.2d at 191. The parties have not directed the Court to a statute or public policy violated by allowing cancellation under the contract.

---

[1] Although Smith v. Municipal Ins. Co., 289 S.E.2d 669 (W.Va. 1982), stated that it overruled the holding in Laxton, the court in Camastro v. Dlesk, 484 S.E.2d 188, 191 (W.Va. 1997) found that the court in Smith only distinguished its facts from those in Laxton.

7

Nevertheless Kitchen urges this Court to find that it is entitled to receive actual notice of the cancellation of the policy. As stated above, the general rule is that actual receipt of the notice of cancellation by the insured is not a condition precedent to the cancellation of the policy.

Dairyland attached a copy of the notice of cancellation. The cancellation policy at issue is known as a standard cancellation policy. See Laxton, 148 S.E.2d at 602. The notice of cancellation provided a specific date in advance when cancellation will be effective and the policy specifically provides that the mailing of notice of cancellation will constitute proof of notice.

Dairyland also submitted the following evidence regarding the cancellation claim. Dairyland submitted the "Certificate of Mailing" from the Post Office which indicates that, on December 30, 2002, mail addressed to Sherry Kitchen, at the address as it appears on the declarations page, was received for mailing. (Dairyland's Mot. Summ. J., Ex. J at B.) In addition, Dairyland provided an affidavit from David Jahntz, custodian of records for Dairyland stating that exhibit J part B is a photocopy of the proof of mailing cancellation notice list enumerating all the cancellation notices to insureds that were mailed on December 30, 2002, i.e. "Certificate of Mailing" discussed supra. (Dairyland's Mot. Summ. J., Ex. J.) There is no direct contradiction of the testimony concerning the mailing of the cancellation notice to

Kitchen. Instead, Kitchen states that she did not receive any notice of cancellation from the insurance company before the February 17, 2003 automobile fire.

Several courts have held that the actual receipt of the notice of cancellation, under a policy such as the one at issue, is not required to cancel the insurance policy. See Moore v. Palmetto Bank and Textile Ins. Co., 120 S.E.2d 231, 235 (S.C. 1961)("the fact that the respondent denied receiving the cancellation notice was not sufficient to support the finding of the jury that the notice had not been mailed, or to support their rejection of the official Post Office receipt of notice of cancellation addressed to the insured."); Camastro, 484 S.E.2d at 191; Laxton, 148 S.E.2d at 725. Based upon the facts above, the mere mailing of the notice of cancellation of the policy by Dairyland is sufficient to effect a cancellation and does not warrant consideration by a jury. See Moore, 120 S.E.2d at 235.

Further, this Court finds that policy's provisions are clear and unambiguous. See Camastro, 484 S.E.2d at 191 (where the provisions concerning cancellation are unambiguous and not contrary to public policy the terms of the insurance contract shall control.) Kitchen argues that the policy provision regarding delivery creates ambiguities reasonably susceptible to two different meanings. The provision states that "[d]elivery of

written notice of cancellation by either you or us will be equivalent to mailing." (Kitchen's Resp. at 8.)

This Court finds that the policy provides for two methods of cancellation; Dairyland could either mail a notice of cancellation to Kitchen or deliver a written notice of cancellation. Dairyland chose to mail a notice of cancellation on December 30, 2002 to the address Kitchen provided on the declarations page.

For the reasons stated above, this Court finds that the language of the policy relating to cancellation is clear and unambiguous, not contrary to public policy and that the mailing of the notice of cancellation is sufficient proof of notice.

B. <u>Cancellation is Clear, Definite and Certain</u>

The rule set forth in <u>Gandee v. Allstate Indem. Co.</u>, 542 S.E.2d 860 (W. Va. 2000), states that:

> [a] notice of cancellation of insurance must be clear, definite and certain. While it is not necessary that the notice be in any particular form, it must contain such a clear expression of intent to cancel the policy that the intent to cancel would be apparent to the ordinary person. All ambiguities in the notice will be resolved in favor of the insured.

Further, West Virginia Code § 33-6A-3 provides that "[a] notice of cancellation for nonpayment of premium is not void on the grounds that the notice includes the amount of premium due or the date by which payment was to be paid."

Kitchen asserts that the notice of cancellation was void based upon <u>Elkins v. State Farm</u>, 475 S.E.2d 504, 507 (W.Va. 1996), which

10

held that "any cancellation notice that informs an ordinary person of the amount due is sufficiently ambiguous as to render the notice ineffective."  In response, Dairyland argues that Elkins is no longer controlling law based upon West Virginia Code § 33-6A-3 and Gandee, 542 S.E.2d at 860.

After careful review of the cancellation notice, this Court finds the language of the cancellation notice to be clear and unambiguous.  West Virginia Code § 33-6A-3 controls in this civil action and clearly provides that "[a] notice of cancellation for nonpayment of premium is not void on the grounds that the notice includes the amount of premium due or the date by which payment was to be paid."  Further, The notice mailed to Kitchen would clearly communicate to an ordinary person that the insurance company intended to cancel coverage under the policy on January 30, 2003. The notice of cancellation clearly states that the reason for cancellation is "non-payment of premium." (Dairyland's Mot. Summ. J., Ex. I.)

Kitchen asserts that a reasonable person would not notice the reason for cancellation because it was located at the bottom of the notice.  Upon inspection of the notice of cancellation, this Court finds that it is stated twice in the notice that the reason for cancellation is non-payment of premiums.  This notice is stated in bold letters at both the middle of the first page and the bottom of the first page.  In addition, the phrase "previously billed and

past due" is at the top of the page.  These statements would lead a reasonable person to understand that the reason for cancellation is non-payment of premiums.  Id.  Further, it must be noted that the notice of cancellation consists of one page.  The notice is not a voluminous document and a reasonable person would be able to read and understand the document.  Thus, the cancellation meets the standard set forth in Gandee, 542 S.E.2d at 860.

For the reasons stated above, this Court finds that Dairyland is entitled to declaratory relief because Dairyland cancelled Kitchen's automobile liability policy on January 30, 2003.  Thus, the claim for the February 17, 2003 automobile fire is not covered under the policy.  It is further unnecessary to discuss Dairyland's alternative argument since this Court finds that the notice of cancellation was delivered pursuant to the provisions of the policy.

Since this Court finds that the policy was cancelled on January 30, 2003, Kitchen's alleged losses from the February 17, 2003 automobile fire are not covered under the policy.  Thus, Kitchen does not have a claim for common law misconduct, violations of the West Virginia Unfair Claims Settlement Practices, breach of implied covenant of good faith and fair dealing, breach of contract, or violation of a fiduciary duty.  Similarly, compensatory and punitive damages cannot be obtained without coverage under the policy.

V.  Conclusion

For the reasons stated above, the defendant Dairyland Insurance Company's motion for summary judgment on the defendant's counterclaim is hereby GRANTED.  Accordingly, the parties pre-trial conference and trial dates are VACATED and this action is DISMISSED and STRICKEN from the docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.  Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    June 2, 2006

                                        FREDERICK P. STAMP, JR.
                                        UNITED STATES DISTRICT JUDGE